UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REED ELSEVIER INC.

          Plaintiff,    :  CIVIL ACTION NO. 13cv8739

v.

TRANSUNION HOLDING COMPANY, INC.

          Defendant.

---

## DECLARATION OF MOHIT KAPOOR

I, Mohit Kapoor, declare as follows pursuant to 28 U.S.C. § 1746:

1.    I have personal knowledge of all of the facts set forth in this Declaration.

2.    I submit this Declaration in the above-captioned litigation in support of TransUnion Holding Company, Inc.'s ("TransUnion") opposition to Plaintiff's request for injunctive relief.

3.    I am employed by TransUnion as its Chief Information and Technology Officer. I have held this position since April 2011.

4.    As TransUnion's Chief Information and Technology Officer, I am responsible for all aspects of technology at TransUnion, including both its revenue-generating and internal systems.

5.    Following TransUnion's acquisition of TLO LLC ("TLO") out of bankruptcy, which is scheduled to close on Monday, December 16, 2013, there is no intent to integrate TLO's client-facing revenue systems into TransUnion. Rather, following the acquisition TLO will be operating as a separate and distinct standalone business that comprises approximately 3-

4% of TransUnion's business. TLO is expected to continue its operations in virtually an identical manner and with virtually all of the same employees performing the same duties from the same location in Boca Raton, Florida as before the acquisition.

6. Consistent with the independence that TLO will retain following the acquisition, TransUnion has no plan to combine or incorporate any of TLO's revenue-generating systems, including its processing platform, with TransUnion's.

7. TransUnion has primarily been using an IBM mainframe platform as its revenue-generating processing platform. However, on or around January 1, 2013, TransUnion began strategically evaluating its technological capabilities and determining which processing platform(s) would be best for TransUnion going forward, in light of the increasing amount and complexity of data being handled and the increasingly sophisticated processing of that data. In connection with this evaluation, TransUnion undertook a "proof of concept," pursuant to which TransUnion compared its IBM mainframe platform with two other processing platforms, specifically LexisNexis' HPCC platform and Ab Initio's platform (which TransUnion had already begun to use alongside IBM's mainframe platform).

8. LexisNexis' HPCC platform was available on an open source basis, pursuant to which the public could use the platform without charge or licensing fees. However, because TransUnion was interested in better understanding how the HPCC platform worked and wanted to ensure that it would be supported and assisted by LexisNexis if it ran its HPCC platform, TransUnion reached out to LexisNexis to determine the feasibility and business terms of entering into a commercial agreement with LexisNexis, pursuant to which TransUnion would pay LexisNexis a certain amount in exchange for LexisNexis' support and assistance in running the HPCC platform at TransUnion.

9. For the next 3-4 months, LexisNexis made available to TransUnion 2-3 of its employees who spent a substantial amount of time consulting with TransUnion to explain how the HPCC platform worked and how its features and capabilities could be used at TransUnion.

10. Following its extensive review, TransUnion ultimately decided not to use or implement LexisNexis' HPCC platform, as TransUnion did not believe it was as commercially refined as Ab Initio's platform. TransUnion was also concerned that, because LexisNexis had an extremely limited customer base using HPCC, there was no proven record of LexisNexis' ability to provide the level of support and assistance that Ab Initio could offer.

11. On June 21, 2013, I advised Vijay Raghavay, LexisNexis' Chief Technology Officer with whom I had spent time speaking about the HPCC platform, of TransUnion's decision not to use the platform. In this conversation, I explained that, for the above-stated reasons, TransUnion had opted to use Ab Initio's processing platform instead. Since then, TransUnion has been working on migrating its operations to the Ab Initio platform and, to this end, has entered into a broader contract with Ab Initio and started training employees on the Ab Initio platform.

12. Like TransUnion, TLO does not use and has no plans to use LexisNexis' HPCC platform. Instead, since TLO's inception, it has used its own proprietary processing platform that was created by TLO's founder, Hank Asher. TLO has continued to use this proprietary processing platform following Armando Escalante's commencement of employment with TLO, and intends to continue using such platform following its acquisition by TransUnion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2013.

_____
Mohit Kapoor