**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **REED ELSEVIER INC.** : | |
| : | |
| Plaintiff, : | **CIVIL ACTION NO. 13cv8739** |
| : | |
| v. : | |
| : | |
| **TRANSUNION HOLDING COMPANY, INC.** : | |
| : | |
| Defendant. : | |

## DECLARATION OF CURTIS MILLER

I, Curtis Miller, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I have personal knowledge of all of the facts set forth in this Declaration.

2.      I submit this Declaration in the above-captioned litigation in support of TransUnion Holding Company, Inc.'s ("TransUnion") opposition to Plaintiff's request for injunctive relief.

3.      I am employed by TransUnion as its Vice President of Mergers and Acquisitions. I have held this position since November 2007.

4.      TransUnion is based in Chicago, Illinois and is a global leader in information and risk management.

5.      As TransUnion's Vice President of Mergers and Acquisitions, I am responsible for managing all mergers and acquisitions undertaken by TransUnion, from initial conception of a proposed deal through a deal's closing.  In connection with such duties, I was very involved in, and served as the point person for, TransUnion's recent acquisition of TLO LLC ("TLO") out of bankruptcy, which acquisition is scheduled to close on Monday, December 16, 2013.

1

6.     TLO is a company based in Boca Raton, Florida that employs approximately 132 employees and provides location and investigative services to a variety of industries.  TLO entered bankruptcy in May 2013, a few months following the death of its founder, Hank Asher, and its assets were later put up for sale.

7.     As of August 12, 2013, TransUnion had no plan or intent to acquire TLO out of bankruptcy.  It was not until August 13, 2013, when TransUnion was approached by Farlie Turner, an investment banking company that represented TLO and encouraged TransUnion to consider acquiring TLO, that it first considered the prospect.  In subsequent conversations, I was informed by Farlie Turner that it had similarly approached a number of other companies, and that it had managed to get eleven companies interested in acquiring TLO.  It was only after Farlie Turner approached TransUnion that TransUnion contemplated purchasing TLO and ultimately became a "stalking horse bidder" in the court-supervised auction sale of TLO.

8.     This auction sale took place on November 20, 2013, ending early in the morning on November 21, 2013.  In addition to TransUnion, Plaintiff Reed Elsevier ("Reed") was one of the bidders seeking to acquire TLO.  Ultimately, TransUnion won the sale, with a bid of $154 Million.  Reed immediately objected to TransUnion's win, alleging that Reed had been prepared to increase its bid to $180 Million but was not afforded the opportunity to do so.  In connection with its objections, Reed filed an objection with the bankruptcy court asking it to deny approval of the sale to TransUnion and reopen the auction.  On November 22, 2013, following a hearing, the court rejected Reed's objections to the sale and approved the sale of TLO to TransUnion.

9.     I was advised by John Blenke, TransUnion's Executive Vice President, Corporate General Counsel, that three days after Reed failed to stop the sale of TLO to TransUnion, Reed

reached out to TransUnion seeking to stop it from permitting Armando Escalante, TLO's current President and Chief Operating Officer, from continuing to work for TLO following the sale.

10.     Upon information and belief, this is not the first time that Reed has brought a lawsuit seeking to disrupt TLO's business.  In fact, approximately four years ago, in April 2009, Reed filed a lawsuit against TLO's founder, Hank Asher, alleging that his formation of TLO violated his non-compete agreement with Reed.  That lawsuit was ultimately dismissed by the court following a confidential settlement between Reed and Mr. Asher.

11.     Upon the closing of TransUnion's acquisition of substantially all of the assets of TLO, TransUnion will not employ Mr. Escalante or any other current employees of TLO. Rather, TransUnion Risk and Alternative Data Solutions, a separate, wholly owned subsidiary of TransUnion that was established for the sole purpose of housing the TLO business after the acquisition, will employ Mr. Escalante and substantially all of TLO's remaining 131 employees, who will continue to work uninterrupted at TLO's offices in Boca Raton, Florida in substantially the same positions and pursuant to substantially the same terms and conditions as immediately prior to the closing.

12.     There is no intent to incorporate or fold TransUnion Risk and Alternative Data Solutions into TransUnion.  Rather, TransUnion Risk and Alternative Data Solutions will operate as a separate and distinct standalone business.

13.     In anticipation of the acquisition of TLO by TransUnion, Mr. Blenke advised and reminded Mr. Escalante by e-mail not to disclose to TransUnion any non-public information of LexisNexis, a subsidiary of Reed.  Similarly, Mr. Blenke advised and reminded TransUnion's senior leadership by e-mail not to seek input or information from Mr. Escalante or any other TLO employee about any non-public information of any other entity, including LexisNexis.

14.     TransUnion's decision to acquire TLO and substantially all of its 132 employees had nothing to do with the fact that Mr. Escalante happened to be the President and Chief Operating Officer of TLO.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December ____, 2013.

Curtis Miller