UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REED ELSEVIER INC.  :
 :
                           Plaintiff,  :   CIVIL ACTION NO. 13cv8739
 :
v.  :
 :
TRANSUNION HOLDING COMPANY, INC.  :
 :
                          Defendant.  :
 :

---

## DECLARATION OF ARMANDO ESCALANTE

I, Armando Escalante, declare as follows pursuant to 28 U.S.C. § 1746:

1. I have personal knowledge of all of the facts set forth in this Declaration.

2. I submit this Declaration in the above-captioned litigation in support of TransUnion Holding Company, Inc.'s ("TransUnion") opposition to Plaintiff's request for injunctive relief.

3. I am currently employed by TLO LLC ("TLO") as its President and Chief Operating Officer. I have been employed by TLO since July 25, 2013.

4. Prior to my employment by TLO, I was employed for approximately six (6) months, between February 2013 and the end of July 2013, by a small start-up company where I served as its Chief Operating Officer.

5. Before that, I worked for approximately nine (9) months, between May 2012 and February 2013, at Opera Solutions as its Chief Operating Officer.

6. As the foregoing makes clear, I have worked at three different companies since I terminated my employment with Plaintiff Reed Elsevier Inc.'s ("Reed") subsidiary LexisNexis,

1

where I served as Chief Technology Officer for its Risk Solutions Division from November 2004 (following LexisNexis' acquisition of Seisint, where I worked previously) until May 2012.

7. In my position at LexisNexis, I was charged with overseeing its Risk Solutions Division's technology systems, product development, security (both physical and logical), platform development, Research & Development, data development, billing systems, data centers, IT services, networking & telecommunications, quality assurance, and project management. A relatively small portion of my time as Chief Technology Officer, approximately 5%, was spent managing the employees who worked on LexisNexis' HPCC platform, which was initially invented and developed by Hank Asher, Seisint's founder. Because I did not work as a programmer or engineer, I was not involved in the source code or programming of the HPCC platform, but rather spent my time in a high-level managerial capacity encouraging LexisNexis' developers and engineers to continue improving and enhancing the functionality of the platform. Part of my strategy in this regard was to get the HPCC platform implemented by users outside of LexisNexis, and to this end worked with LexisNexis and Reed over a two-year period to make the HPCC platform available on an open source basis, which meant that both the platform and its underlying source code were made available to the public for use free of charge and without any licensing fees. I hoped that the use of the HPCC platform by more users outside of LexisNexis would result in feedback that would in turn lead to further improvements and enhancements in the platform.

8. By the time I was approached by Carly Asher Yoost and Desiree Asher – TLO's co-CEOs who had assumed their roles shortly after the sudden and untimely January 2013 death of their father, Hank Asher – to join TLO as its President and Chief Operating Officer, it had been more than one year since I had left LexisNexis and I was therefore no longer subject to any

non-competition obligation to Reed/LexisNexis. I was consequently free to work for TLO, a competitor of LexisNexis' Risk Solutions Division, which I began doing in July 2013.

9. As President and Chief Operating Officer of TLO, I am charged with overseeing the operations and functions of TLO, including its products and technology.

10. Following the acquisition of TLO by TransUnion, my understanding is that TLO will operate as a separate and distinct standalone business and will be run and operated in essentially the same manner it was before the acquisition, with the same employees performing the same duties from the same location in Boca Raton, Florida. Although it is anticipated that my title will change following the acquisition, my employment with the TLO business is scheduled to continue uninterrupted, pursuant to which I will continue to be charged with overseeing TLO's products and technology. Such technology includes TLO's proprietary data platform, HADAR, that its founder, Hank Asher, created for TLO and that it has used since its inception and will continue to use. TLO has not used and does not use LexisNexis' HPCC platform, nor do I have any plan or intention of bringing the HPCC platform to TLO. I similarly have no plan or intention of bringing the HPCC platform to TransUnion, which I understand already rejected such platform following the "proof of concept" and evaluation it undertook of the platform with LexisNexis' assistance.

11. In anticipation of the acquisition of TLO by TransUnion, John Blenke, TransUnion's Vice President, Corporate General Counsel, advised and reminded me by e-mail not to disclose to TransUnion any non-public information relating to LexisNexis. I represent and acknowledge that I have not disclosed, and will not disclose, any such non-public information and will abide by all of my confidentiality and non-disclosure obligations to Reed/LexisNexis in

this regard. I further represent and acknowledge that I will abide by my non-solicitation obligations to Reed/LexisNexis.

12.     Upon information and belief, Reed is seeking to prohibit me from continuing to work for TLO following its acquisition by TransUnion due to a "no-hire" agreement entered into between Reed and TransUnion. The prospect of losing my job is devastating to me and my family, not only because I have done nothing wrong and am not in violation of any obligation to Reed, but because I am the sole provider for an extended family network. In particular, my salary supports my wife, who is a full-time student completing her PhD in Anthropology; my older daughter, who is a full-time student at college and lives at home; my younger daughter who lives at home and is looking for a full-time job; my 3 ½ year-old granddaughter who lives at home; and my mother-in-law who suffers from Alzheimer's and who I support.

13.     I am 59 years old, making future job prospects very difficult.

14.     Neither I nor my family can afford for me to lose my job, and I implore the court to realize the gross inequity that would occur were it to order that I effectively be terminated from my position as President and Chief Operating Officer at TLO. I was never a party to any "no-hire" agreement between Reed and TransUnion, nor was I consulted in connection with that agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2013.

_____
Armando Escalante