UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REED ELSEVIER INC.

         Plaintiff,    CIVIL ACTION NO. 13cv8739

v.

TRANSUNION HOLDING COMPANY, INC.

         Defendant.

## DECLARATION OF ELIZA DESIREE ASHER

I, Eliza Desiree Asher, declare as follows pursuant to 28 U.S.C. § 1746:

1. I have personal knowledge of all of the facts set forth in this Declaration.

2. I submit this Declaration in the above-captioned litigation in support of TransUnion Holding Company, Inc.'s ("TransUnion") opposition to Plaintiff's request for injunctive relief.

3. Prior to the acquisition of TLO LLC ("TLO") by TransUnion, I served with my sister as Managing Member (from January through May 9, 2013) and subsequently as co-Chief Executive Officer (from May 9 through December 16, 2013) of TLO. My sister and I assumed these positions following the unexpected death of our father, Hank Asher, in January 2013.

4. Since its inception, TLO has used its own proprietary computer processing platform, HADAR, which was specifically developed for TLO by our father.

5. On May 9, 2013, TLO filed a voluntary petition for bankruptcy.

6. On July 25, 2013, TLO entered into an employment agreement with Armando Escalante, pursuant to which Mr. Escalante would become TLO's President and Chief Operating

Officer. TLO's hope and expectation was that Mr. Escalante would be able to successfully lead TLO out of bankruptcy and have it become a viable and successful business.

7. TLO opted to undertake an auction involving a sale of its assets under 11 U.S.C. § 363 as opposed to a Chapter 11 Plan of Reorganization in which new shares of stock could have been issued, due to the fact that it became clear that a § 363 sale of assets would maximize the value to the bankruptcy estate.

8. Following Reed Elsevier Inc.'s ("Reed") loss of the bankruptcy auction to TransUnion, it filed with the Bankruptcy Court objections in which it sought to deny approval of the sale to TransUnion and reopen the auction. The Bankruptcy Court subsequently held a hearing on Reed's objections, in which I provided testimony. As explained in my testimony, one of TLO's reservations about selling TLO to Reed was its concern that Reed might be acquiring the business just to shut it down. I had this reservation based on conversations I had with LexisNexis Risk Solutions' Chief Executive Officer, Rick Trainor, who had previously discussed with me what his intentions were with respect to TLO. As a result, when I was asked in the hearing by Reed's counsel for the basis of my understanding of Reed Elsevier's intentions if it acquired TLO's business, I responded that this was based on direct conversations I had had with LexisNexis Risk Solutions' CEO.

9. As of the December 16, 2013 close of the acquisition of TLO by TransUnion, both my sister and I ceased to serve as Chief Executive Officer of the TLO business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 24, 2013.

_____
Eliza Desiree Asher