UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REED ELSEVIER INC. | : |
|                               Plaintiff, | : CIVIL ACTION NO. 13cv8739 |
| v. | : |
| TRANSUNION HOLDING COMPANY, INC. | : |
|                               Defendant. | : |

## DECLARATION OF JAMES PECK

I, James Peck, declare as follows pursuant to 28 U.S.C. § 1746:

1. I have personal knowledge of all of the facts set forth in this Declaration.

2. I submit this Declaration in the above-captioned litigation in support of TransUnion Holding Company, Inc.'s ("TransUnion") opposition to Plaintiff's request for injunctive relief.

3. I am employed by TransUnion as its Chief Executive Officer. I have held this position since December 31, 2012.

4. Prior to working at TransUnion, I was employed as the Chief Executive Officer of LexisNexis Risk Solutions, a division of LexisNexis, which is a wholly-owned subsidiary of Reed Elsevier, Inc. ("Reed").

5. The decision to make LexisNexis Risk Solutions' HPCC platform available on an open-source basis was discussed openly and extensively within LexisNexis Risk Solutions and Reed Elsevier, and with Reed Elseviers' Board of Directors, and was ultimately approved by Reed Elsevier's CEO, Erik Engstrom.

1

6. In November, 2012, I received a job offer from TransUnion to become its Chief Executive Officer.

7. To the best of my knowledge, no current or former Reed or LexisNexis Risk Solutions employees who would be affected by the December 2012 no-hire agreements entered into by me and TransUnion with Reed, were consulted about or informed of such agreements prior to their execution.

8. Following a "proof of concept" evaluation period, TransUnion ultimately opted to use the Ab Initio platform instead of LexisNexis Risk Solutions' HPCC platform. Since then, TransUnion has entered into a substantial, multi-year contract with Ab Initio.

9. Having conducted an extensive evaluation of the HPCC platform and made and implemented its decision to use Ab Initio's competing platform instead, TransUnion has no plans to use or implement in any way the HPCC platform.

10. TransUnion acquired TLO out of bankruptcy with the hope that its impressive technology and data assets would enable it to operate as a successful, standalone business.

11. Mr. Escalante would not work for TransUnion following the acquisition but would rather continue in his role as the head of TLO's business, overseeing TLO's products and technology just as he did prior to the acquisition.

12. If Mr. Escalante is prevented from continuing his work at TLO as the result of an injunction, the TLO business would be devastated, as it would have lost its leader just as TLO emerged from bankruptcy and was seeking to become a viable company.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2013.

James Peck