UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REED ELSEVIER INC.  :
: 
Plaintiff,  :  CIVIL ACTION NO. 13cv8739
:
v.  :
:
TRANSUNION HOLDING COMPANY, INC.  :
:
Defendant.  :
:

---

## DECLARATION OF MARC M. ALLON

I, Marc M. Allon, declare as follows pursuant to 28 U.S.C. § 1746:

1.  I have personal knowledge of all of the facts set forth in this Declaration.

2.  I submit this Declaration in the above-captioned litigation in support of TransUnion Holding Company, Inc.'s opposition to Plaintiff's request for injunctive relief.

3.  I am an attorney employed at Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), a multinational law firm with offices located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

4.  I am admitted to practice and am a member in good standing of the bar of the State of New York, and the United States District Court Southern District of New York.

5.  I submit this declaration in connection with the work that I (and other attorneys at WilmerHale) carried out on behalf of TransUnion Risk and Alternative Data Solutions, Inc. (formerly known as TransUnion Acquisition Corp.) and its affiliates (collectively, "TransUnion"), in connection with the successful "stalking horse bid" by TransUnion, pursuant to section 363 of the Bankruptcy Code, 11 U.S.C. § 101 et seq., for substantially all the assets

(the "Sale" of the "Acquired Assets") of TLO, LLC ("TLO"), a debtor and debtor in possession (the "Debtor"), in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"), Case No. 13-20853-PGH.

6. On October 24 and 25, 2013, the Bankruptcy Court entered an order (the "Bidding Procedures Order") [Docket No. 351, as amended by Docket No. 365] approving, *inter alia*, the procedures (the "Bidding Procedures") to be used in connection with the auction (the "Auction") of the Acquired Assets, to be conducted in accordance with the Bankruptcy Code.

7. In accordance with the Bidding Procedures, LexisNexis Risk Solutions FL Inc., an affiliate of Plaintiff Reed Elsevier Inc. (collectively, "Reed"), submitted a Qualifying Bid (as provided in the Bidding Procedures Order and Bidding Procedures) for the Acquired Assets and participated in the Auction, which commenced on the morning of November 20, 2013.

8. The Auction lasted over 21 hours, concluding the morning of November 21, 2013. The Auction was vigorously competitive, and featured fierce and determined bidding by three distinct bidders (TransUnion, Reed and another bidder). After the conclusion of the Auction, TLO declared TransUnion to have made the highest or otherwise best offer for the Acquired Assets. I understand that this determination was based on a variety of factors, including, but not limited to, TransUnion's $154 million cash bid and its ability to close the Sale, as evidenced by the anti-trust clearance that TransUnion had already received from the Federal Trade Commission pursuant to the Hart-Scott-Rodino Act.

9. Almost immediately following the conclusion of the Auction, Reed filed an objection with the Bankruptcy Court [Docket No. 530] contesting, among other things, TLO's determination that TransUnion made the highest or otherwise best offer for the Acquired Assets.

Reed requested that the Bankruptcy Court "reopen" the Auction to allow Reed to continue to bid (the "Reed Objection").

10. On November 22, 2013, the Bankruptcy Court held a hearing (the "Sale Hearing") to consider the results of the Auction and all relevant pleadings, including Reed's Objection.

11. At the Sale Hearing, TLO's investment banker explained that one of the reasons TLO's bid had been accepted over Reed's bid was because of the significant concerns TLO and its Bankruptcy Court-approved professionals had about Reed's ability to timely obtain anti-trust approval from the Federal Trade Commission to purchase TLO, particularly because Reed received a "second request" under the Hart-Scott-Rodino Act, indicating serious questions about whether Reed's acquisition of TLO would receive regulatory approval in a timely manner.

12. Eliza Desiree Asher, TLO's co-Chief Executive Officer, also explained at the Sale Hearing that TLO had reservations about selling the business to Reed because of TLO's understanding that Reed planned to acquire the business just to shut it down. When asked by counsel for Reed why TLO believed this would occur, my recollection is that Ms. Asher replied: "your CEO told me that."[1]

13. At the conclusion of the Sale Hearing, the Bankruptcy Court overruled Reed's Objection to the Sale and approved the Sale of TLO to TransUnion. In so doing, the Bankruptcy Court found the Sale of TLO to TransUnion to be in the best interests of TLO and its creditors.

14. To effectuate the Sale, TLO and TransUnion have agreed upon an asset purchase agreement (the "APA"), which has been approved by the Bankruptcy Court [Docket No. 610]. This APA requires and makes clear that, pursuant to section 365 of the Bankruptcy Code, TLO

---

[1] I base this on my recollection of Ms. Asher's testimony at the Sale Hearing rather than the transcript of the Sale Hearing, as the transcript reflects that Ms. Asher's statement was "[inaudible]." As I was informed by the court reporter, this response and a number of others are recorded as "[inaudible]" in the transcript because there was a problem with the microphone system in the courtroom and portions of the hearing were not captured.

will assume and assign to TransUnion, TLO's July 25, 2013 Employment Agreement with Armando Escalante, who has been employed as TLO's President and Chief Operating Officer since July 2013. The APA also requires and makes clear that TransUnion will make offers of employment to substantially all of TLO's current at-will employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 13, 2013.

                                                                                Marc M. Allon